Huey Treeman CLAY, Appellant,

v.

HYATT REGENCY HOTEL, Appellee.

No. 82–2302.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1983.

Decided Jan. 13, 1984.

Rehearing Denied Feb. 23, 1984.

---

722

Samuel I. McHenry, Kansas City, Mo., for appellant.

Gage & Tucker, Kansas City, Mo., Loyd E. Owen, Jr., for appellee Hyatt Regency Hotel.

Before HEANEY, ROSS and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Huey Treeman Clay appeals the judgment entered in favor of Hyatt Regency Hotel (Hyatt) in his race discrimination suit brought under Title VII and 42 U.S.C. § 1981 (1981). Both actions were tried to the court.[1] While expressing doubt that Clay had established a prima facie case, the district court assumed that he had. It found, however, that Hyatt had met its burden of articulating a legitimate nondiscriminatory reason for not employing Clay: he was not as well qualified as other applicants because "he would not fit into defendant's organization as well as other applicants would." The district court found that the reason given was not pretextual. Clay

---

1. The Honorable John W. Oliver, United States Senior District Judge for the Western District of Missouri.

argues that the district court erred in not finding a prima facie case, that there was direct evidence of discrimination that was not rebutted by defendant, that the nondiscriminatory reasons articulated by defendant were pretextual, and that the court erred in finding that plaintiff's prior experience as a bell person disqualified him from employment. We affirm the judgment of the district court.

Clay, who is Black, filed a written application for employment with Hyatt on May 16, 1980, before the opening date of the hotel, July 1, 1980. Hyatt's bell captain, Danny Long, who is Caucasian, interviewed him on June 6, 1980, and afterward prepared a memorandum worded as follows:

Appointment Date: 6/6/80

Appointment Time 2:00

Department: Bell service

Name of Applicant: Huey T. Clay

Position Applied For: Bellperson

Appearance: acceptable; Experience: acceptable; Personality: acceptable; Motivation: acceptable; Self-expression: acceptable; Salary requirement: acceptable; Comprehension: acceptable; Schedule Flexibility: acceptable.

Comments: Hair too long; self aclaimed [sic] *head strong*, been manager at Crown Center; says he knows it all, filed EEOC Complaint with last employer; not opposed to tux or top hat but doesn't like door, doesn't want g. yard, seems level headed.

Standard Pretrial Order No. 2, June 24, 1982, at 3 (emphasis in original). Clay had worked on the bell staff at the Crown Center, a large hotel near the Hyatt, for approximately two years. (TR 16, 42)

When Clay learned that Hyatt was not going to offer him a job, he went to talk to Long, who told him that he did not think Clay would fit in and that Clay was too dominant. Of the three hundred applicants for the bell staff through December 1980, Hyatt hired sixteen persons, of whom five were Black. (Appellant's Brief at 4–5) Of the ten bell persons hired as of the July 1 opening, three were Black. (TR 91)

At trial Long testified as to why he decided not to hire Clay. In opening a hotel, he explained, it was important to have individuals who were willing to cooperate and be team players. Long thought it best not to have an individual already programmed from previous experience; he needed employees who were willing to listen and learn, and whom he could train in accordance with his procedures during the opening. He considered prior bell experience detrimental during an opening situation. None of the individuals on the bell staff employed by Hyatt in anticipation of the opening had earlier bell experience. Long continued to consider Clay for a bell position after the hotel opened. (TR 85, 111) Nonetheless, while it was Hyatt policy to maintain applications for ninety days, (TR 120) he was requested to return applications, including Clay's, to the personnel office after the hotel opened. (TR 85)

The district court made specific, detailed findings that Clay was not denied employment because of his race or because he had filed an EEOC charge against a former employer:

There is no dispute about the fact that defendant's employee Danny Long noted on the interview memorandum that he made to refresh his recollection of the interview that plaintiff "filed EEOC complaint with his last employer." We are satisfied, however, that Mr. Long told the truth in regard to the circumstances which prompted that notation and that he also told the truth when he testified that such notation was not a contributing factor in his decision not to employ the plaintiff.

Although expressing some doubts, the district court assumed that Clay had established a prima facie case under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Hence, we need not address Clay's contention that the district court failed to find a prima facie case.

Under the approach that the Supreme Court outlined in *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824, a

plaintiff's showing of a prima facie case then shifts the burden to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *See Person v. J.S. Alberici Construction Co.,* 640 F.2d 916, 919 (8th Cir.1981). Clay argues that he produced direct evidence of discrimination that was not rebutted by defendant's articulated reason for not offering him employment. Given direct evidence of discrimination, it is incorrect to rely on a *McDonnell Douglas* form of rebuttal, Clay argues, citing *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir. 1982) ("mere statement of legitimate reasons" is insufficient rebuttal where evidence of discrimination is direct, not circumstantial). Instead, Clay contends, Hyatt may rebut the prima facie case only by proving by a preponderance of the evidence that the same result would have been reached absent the discrimination, a standard set forth by the Supreme Court in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

■ In referring to "direct evidence" of discrimination, Clay appears to be arguing that since he was undoubtedly qualified physically and mentally to perform the job, the reason he was not hired was his race. He also argues that there is direct evidence that an impermissible factor, namely the previous EEOC complaint, played a significant part in the decision not to hire him. (Appellant's Brief at 10) We reject Clay's strained characterization of the evidence as "direct evidence." Unlike the record in *Lee,* the record does not reflect any direct causal links necessary for Clay's conclusions of discrimination. In contrast, *Lee* involved direct testimony that the employers attempted to cultivate a greater "white presence" and instructed supervisors to "build files" with the objective of dismissing minority teachers. *Lee,* 684 F.2d at 774–75. Because we see no direct evidence here that would render applicable the rule in *Lee,* we conclude that the *McDonnell Douglas* form of rebuttal is appropriate in this case.

■ Long's testimony that Clay was too dominant and headstrong, and that his prior bell experience would be detrimental during the hotel's opening, sufficiently articulated a legitimate, nondiscriminatory reason for not hiring Clay. Under the *McDonnell Douglas* approach, the inquiry does not end there; a plaintiff must be afforded a fair opportunity to show by a preponderance of the evidence that the employer's stated reason is in fact pretext. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. Clay argues that the district court erred in not finding Hyatt's articulated reason to be a pretext; he essentially raises the issue of Long's credibility. The district court specifically found as follows:

6. During the interview, it was noted that plaintiff was generally qualified for employment but, in Long's opinion, Mr. Clay tended to be headstrong, interruptive and exhibited a "know-it-all" attitude.

7. In Mr. Long's judgment, Mr. Clay would not fit into defendant's work force.

8. As a result of the interview and other contacts he had with plaintiff, Mr. Long selected other individuals whom he felt were better qualified for the position of bellman.

These findings, coupled with Long's testimony about the necessity for building a cohesive crew that would work together, substantially supported the court's conclusion that plaintiff was not as well qualified as others because he would not fit into defendant's organization as well as they. Clay argues that this reason is a subjective evaluation in which discrimination could play a strong part. Clay failed, though, to convince the district court, by a preponderance of the evidence, that Hyatt's business judgment was a pretext for discrimination. The district court found that of sixteen persons employed by Hyatt in June 1980, three of the ten bell persons were Black, one of the five door persons was Black, and the one limousine driver was Caucasian.

The court also found that eventually only two of those people, both of whom were Caucasian, were terminated. According to the EEO–1 report filed by Hyatt for the year in which Clay applied, 41 percent of Hyatt's employees and 14 percent of its officials and managers were Black; for the following year, the percentages were 36 percent and 13 percent, respectively. Furthermore, the court heard testimony that Long took neither the EEOC notation nor Clay's race into consideration in deciding not to employ Clay. These factual findings are binding upon us unless clearly erroneous, and we cannot conclude from the whole record that the court erred in its findings. *See Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

■ With respect to the pretext issue, Clay also argues that the court erred in believing Long's testimony that Clay's previous bell experience rendered him less qualified than those without previous experience. While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979). Clay has not demonstrated that the reasons articulated by Long were pretextual. The court did not clearly err in finding that the hiring for the opening of the hotel required a different type of employee than would be desirable when the operation matured.

We conclude that the district court analyzed this case under the proper *McDonnell Douglas* allocation of proof. On the record before us we cannot conclude that the findings of fact are clearly erroneous. Accordingly, we affirm.